**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Moussa S., | Case No. 26-cv-01408 (PJS/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Pamela Bondi, *Attorney General*; Kristi Noem, *U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement,* | |
| Respondents. | |

This matter is before the Court on Petitioner Moussa S.'s[1] Verified Amended Petition for Writ of Habeas Corpus ("Amended Petition") (Dkt. 7). This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the following reasons, this Court recommends that the Amended Petition be granted.

## I.    BACKGROUND

Petitioner alleges, and Respondents do not dispute, the following facts. Petitioner is twenty-four years old. (Dkt. 7 at 5.) Petitioner is a citizen of Ivory Coast who has resided in the United States since March, 2021. (*Id.* at 1, 5.) An order of removal was

---

[1]    This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders and report and recommendations in immigration matters.

entered against Petitioner in September 2021.  (*Id.* at 5.)  While Petitioner was detained pending removal, a Minnesota couple agreed to serve as his hosts and sponsors.  (Dkt. 7-1 ¶ 2.)  Petitioner was released from ICE custody on an Order of Supervision ("OSUP") on or about December 13, 2021.  (Dkt. 7 at 5.)  Petitioner then moved to Duluth to live with the Minnesota couple and has become part of their family.  (Dkt. 7-1 ¶ 3.)  The Minnesota couple were appointed as Petitioner's guardians pursuant to the Minnesota State Court At Risk Juvenile process.  (*Id.* ¶ 5.)

In August 2022, Petitioner applied for Special Immigrant Juvenile Status ("SJIS") and permanent residency.  (Dkt. 7 at 5.)  His SJIS application was granted on March 2, 2023, and he was granted four years of deferred action.  (*Id.* at 6.)  His permanent residence application remained pending at that time.  (*Id.*)

Since his release from ICE custody in 2021, Petitioner has complied with all terms of his OSUP and has attended all ICE check-ins.  (*Id.*)  During this time, Petitioner has learned English and obtained a high school diploma.  (*Id.*)  Petitioner has a valid work permit.  (*Id.*)

On February 12, 2026, at around 12:31 p.m., Petitioner appeared for a routine ICE check-in, accompanied by the Minnesota couple and several friends.  (*Id.* at 6.)  Approximately 60 to 90 minutes after Petitioner arrived, an ICE agent took Petitioner and one member of the Minnesota couple to a "secured area," where, despite being shown a copy of the document granting Petitioner SIJS status and deferred action, an ICE agent stated that Petitioner did not have "status" and would be detained.  (*Id.* at 7-8.)  At no point prior to this detention did any ICE agent state that Petitioner's OSUP was being

2

revoked or provide any reason for his detention other than the fact that he did not have "status." (*Id.* at 8.)

After taking Petitioner into custody, Respondents completed a Notice of Revocation of Release, digitally signed by DDO Scott V. Stricker at 3:24 p.m. on February 12, 2026 and served on Petitioner at 3:55 p.m. on the same day. (*Id.* at 8-9; *see also* Dkt. 6-3 (Notice of Revocation of Release).) The Notice stated that Petitioner's OSUP was revoked because:

- "You violated a condition of your release. Specifically, you: Failed to apply for a travel document to Vietnam; "

- "Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future;" and

- "ICE is seeking a travel document to effect your expeditious removal to Ivory Coast."

(Dkt. 6-3 at 1-2.)

Respondents also filed an "Alien Informal Interview" summary authored by an ICE Officer, stating that he interviewed Petitioner pursuant to 8 C. F. R. § 241.13(i) on February 12, 2026. (Dkt. 6-3 at 3.) The interview summary states that Petitioner requested to speak with his lawyer. (*Id.*) Petitioner was not provided with access to his attorney. (Dkt. 7 at 9.)

Petitioner filed a Petition for a Writ of Habeas Corpus in this case on February 13, 2026. (Dkt. 1.) Later that day, Chief United States District Judge Patrick J. Schiltz issued an Order requiring Respondents to answer the Petition by no later than February 16, 2026. (Dkt. 3 at 1.) The Order required Respondents' answer to include, among

other things, "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition," and "[w]hether the absence of a warrant preceding petitioner's arrest necessitates petitioner's immediate release." (*Id.* at 1-2.)  The Order also enjoined Respondents from removing Petitioner from the District of Minnesota until further order of the Court.  (*Id.* at 2.)  Petitioner was permitted to file a reply to Respondent's answer by no later than February 18, 2026.  (*Id.*)

Respondents filed their answer on February 16, 2026.  (Dkt. 5.)  On February 18, 2026, Petitioner filed an Amended Petition for Writ of Habeas Corpus, in light of new information revealed in Respondent's answer.  (Dkt. 7.)  The Court ordered Respondents to file an answer to the Amended Petition (Dkt. 8), which Respondents did on February 23, 2026 (Dkts. 10, 11).  Among other things, their response to the Amended Petition included a Declaration by one of the lawyers for Respondents stating:

> With respect to the reference to a travel document from Viet Nam in the Notice of Revocation, attached as Exhibit C to my declaration dated February 16, 2026 filed herein, agency officials conveyed to me that was a mistake or scrivener's error. The Notice of Revocation should have referenced to petitioner's failure to cooperate to obtain a travel document from his native country of the Ivory Coast, not Viet Nam.

(Dkt. 10 ¶ 6.)  Counsel was not able to provide any declaration or other evidence supporting this assertion when he filed this Declaration.  (*See id.* ¶ 4.)

The response also included a Declaration of Deportation Officer Angela Minner "based on a review of contents of the Plaintiff's alien file, official records checks, and information relayed to me by other officials."  (Dkt. 11 ¶ 1.)  The Minner Declaration

stated, among other things, that "[o]n February 22, 2026, ICE/ERO submitted a formal travel document request packet to ERO Headquarters for review." (*Id.* ¶ 7.)

The case is now ripe for decision.

## II.   LEGAL STANDARD

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1 at 5.) Under this provision, a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2)). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to immigration-related detention after a detention order becomes final. *Faysal N. v. Noem*, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *2 (D. Minn. Jan. 6, 2026).

The Court has jurisdiction to hear this Petition, which does not challenge the removal order but instead challenges the revocation of Petitioner's supervised release and the lawfulness of his re-detention. *See Garrison G. v. Bondi*, No. 26-CV-172 (JMB/DJF), 2026 WL 157677, at *2 (D. Minn. Jan. 17, 2026) ("Because Garrison G. does not challenge the removal order but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of his current re-detention."); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings

remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

### III.    DISCUSSION

Petitioner seeks relief on several grounds, including Respondents' alleged violation of the Immigration and Nationality Act and 8 C.F.R. § 241.013(i)(2)-(3) (Dkt. 7 ¶¶ 86-89), violation of the Fifth Amendment on substantive and procedural grounds (*id.* ¶¶ 66-76), and violation of the Administrative Procedure Act (*id.* ¶¶ 77-85).  Because the Court finds ICE has violated 8 C.F.R. § 241.013 in re-detaining Petitioner, it does not reach the alternative grounds.  *See Faysal N.*, 2026 WL 36066, at *3 n.3 ("Faysal N. also asserts that his re-detention violated the Administrative Procedure Act and the due process clause of the Fifth Amendment.  Because the Court finds that ICE has violated its own regulations in re-detaining Faysal N., such that his current detention is unlawful, the Court does not reach these alternative arguments." (citation omitted)).

As to his regulatory challenge, Petitioner argues ICE did not comply with the requirements of 8 C.F.R. § 241.13, which governs the revocation of an order for supervised release.  (*See* Dkt. 7 ¶¶ 77-89.)  This regulation provides, in relevant part, that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  This regulation also sets forth factors to consider in determining whether removal is significantly likely in the reasonably foreseeable future, including: the noncitizen's efforts to comply with the removal order; the history of ICE's efforts to

remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular noncitizen and his assistance with those efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question.  8 C.F.R. § 241.13(f). The regulation further provides that:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

In general, a habeas petitioner bears the burden of showing that their detention violates the law.  *See Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966). However, courts in this jurisdiction have concluded that 8 C.F.R. § 241.13(i)(2) places the burden on the government to establish that changed circumstances justify a non-citizen's re-detention.  *E.g.*, *Garrison G. v. Bondi.*, 2026 WL 157677, at *3; *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 900 (D. Minn. 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025).  As this Court previously found in *Ban S. v. Bondi*, No. 25-CV-4750 (PJS/ECW) (D. Minn. Jan. 17, 2026), *R. & R. adopted*, 25-CV-4750 (PJS/ECW) (D. Minn. Jan. 26, 2026)), the reasoning in those cases is persuasive, and the Court therefore finds that 8 C.F.R. § 241.13(i)(2) requires ICE to show changed circumstances

that justify revocation of supervised release.  As one court has explained, this requirement is consistent with the default rule that the burden falls on the party who "generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion."  *See Roble*, 803 F. Supp. 3d at 772 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting McCormick on Evidence § 337 (5th ed. 1999))).  As it is the government who seeks to change the state of affairs by re-detaining Petitioner, it is the government who bear the burden to establish the changed circumstances that justify re-detention.  *See id.*

Several courts in this District have concluded that the government does not meet its burden when it makes conclusory assertions of likelihood of removal.  *E.g.*, *Ban S.*, No. 25-CV-4750, Dkt. 8 at *7 (concluding that the government had not met its burden where "the only evidence of changed circumstances offered by Respondents is Robinson's statement that 'ICE Headquarters and Removal Operations is actively working with the Department of State and the Department of Homeland Security on removal logistics for Petitioner[']") (citation modified); *Roble*, 803 F. Supp. 3d at 773 (concluding that the government did not meet its burden when it "provided 'scant information' about what 'assistance' it has requested from ICE headquarters for a third country removal, and it has provided no information about the anticipated outcome of requesting that assistance.").

Here, Respondents have not established that Petitioner has violated any condition of release.  The statement in the Notice of Revocation of Release that Petitioner violated a condition of his release because he "[f]ailed to apply for a travel document to return to

Vietnam" is clearly false because Petitioner has no connection to Vietnam.  (*See* Dkt. 6-3 at 1.)  Neither can the Court accept Respondents' assertion that the Notice "should have referenced to petitioner's failure to cooperate to obtain a travel document from his native country of the Ivory Coast" as evidence that Petitioner in fact failed to do so.  This allegation was "conveyed" to counsel for Respondents by unnamed agency officials, but no declaration from an individual with personal knowledge of those facts has been submitted to the Court (*see* Dkt. 10 ¶ 6), nor have Respondents described how Petitioner allegedly failed to cooperate.  The Court notes that the Minner Declaration does not mention any lack of cooperation by Petition with respect to obtaining a travel document. Accordingly, the Court gives no weight to the unnamed agency officials who say the Notice "should have referenced to [sic] petitioner's failure to cooperate to obtain a travel document from his native country of the Ivory Coast, not Viet Nam."  (Dkt. 10 ¶ 6.)  The Court finds that Respondents have not provided such "affidavits and exhibits as are needed to establish the lawfulness and correct duration of petitioner's detention in light of the issues raised in the petition" (*see* Dkt. 3 at 1) insofar as they assert Petitioner violated the OSUP.

As to changed circumstances, Respondents now claim that they revoked Petitioner's OSUP and took him into custody on February 12, 2026 "based on current information from ERO Headquarters that there is a significant likelihood of removal in the reasonably foreseeable future for citizens of Ivory Coast with final orders of removal."  (Dkt. 11 ¶ 6.)  It is true that "the history of the Service's efforts to remove aliens to the country in question" and "the views of the Department of State regarding the

prospects for removal of aliens to the country or countries in question" are relevant factors as to whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future, *see* 8 C.F.R. § 241.13(f), but for the reasons explained below, this conclusory and general assertion about "current information" as to "citizens of Ivory Coast with final orders or removal" is insufficient to show changed circumstances as to Petitioner himself.  Moreover, given the "mistake or scrivener's error" in the Notice asserting that Petitioner failed to apply for a travel document to return to Vietnam, it is unclear that DDO Strickner actually issued the Notice based on any facts relevant to Petitioner, including the "current likelihood of removal to Ivory Coast, when he signed the Notice (much less when Petitioner was detained).  Indeed, the Notice contains another false statement, as it asserts that "ICE is seeking a travel document to effect [Petitioner's] expeditious removal to Ivory Coast" when in fact ICE did not seek a travel document until 10 days after DDO Strickner signed the Notice. (*Compare* Dkt. 6-3 at 2, *with* Dkt. 11 ¶¶ 6-7 (first request for travel document submitted on February 22, 2026).)  Under these circumstances, the Court finds that Respondents have not shown that when they detained Petitioner, they did so because they had determined that there was a significant likelihood of removing Petitioner in the reasonably foreseeable future.

The Court has also considered the evidence of changed circumstances that Respondents requested and obtained **after** they detained Petitioner and concludes that this evidence does not satisfy Respondent's burden to justify Petitioner's re-detention. Respondents also state that they submitted a formal travel document request packet to

ERO Headquarters for review on February 22, 2026, ten days after Petitioner's detention. (*See* Dkt. 11 ¶ 7.)  On February 23, 2026, the request was forwarded to the Embassy of Ivory Coast.  (*Id.* ¶ 8.)  According to the Minner Declaration, based on similar cases, ICE anticipates that the travel document will be issued within 30 days.  (*Id.* ¶ 9.)  But as several courts in this District have held, the fact that a travel document was requested **after** a Petitioner was detained does not establish changed circumstances that justify detention.  *E.g. Dusan C. v. Bondi*, No. 26-CV-00620 (JRT/ECW), 2026 WL 458128 at *4 (D. Minn. Feb. 13, 2026), *R. & R. adopted*, 2026 WL 465534 (D. Minn. Feb. 18, 2026); *Yee S.*, 2025 WL 2879479, at *4.  The Court also notes that in some cases, the issuance of a travel document after a petitioner's re-detention is insufficient to meet Respondents' burden to establish changed circumstances.  *E.g.*, *Vang v. Bondi*, No. 26-CV-1381 (JMG/DLM), at *5 (D. Minn. Feb. 18, 2026) (ordering release where Respondents obtained a travel document after detaining Petitioner); *Yeng X. v. Noem*, No. 26-CV-1399 (JMG/ECW), at *2-3 (D. Minn. Feb. 18, 2026) (same).  All of these reasons are sufficient to recommend granting the Petition.

While the Court does not address every possible basis for relief, the Court also notes that Respondents have also failed to comply with 8 C.F.R. § 241.13(i)(3), which requires that:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of

supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).  The Notice and interview provided to Petitioner in this case were deficient because they did not identify the changed circumstances that supported the revocation of his release.  *See Faysal*, 2026 WL 36066, at *4 (finding notice deficient where "[t]he Notice of Revocation of Release does not identify any 'changed circumstances' or provide any explanation to support the conclusion that [the petitioner] is significantly likely to be removed in the reasonably foreseeable future.  In this notice, ICE claims summarily that the agency had made a 'determination that there are changed circumstances in your case,' but it includes no factual statements or explanation.").  Indeed, the record is clear that Respondents had not even requested a travel document when they served Petitioner with the Notice and interviewed him on February 12, 2026.  (*See* Dkt. 11 ¶ 7.)  And the Notice fails to identify what circumstances have changed to make removal significantly likely—including because the Notice did not even state the "current information" relating to "citizens of Ivory Coast" described in the Minner Declaration.  (*See id.* ¶ 9.)

Courts in this District have ordered release when ICE violated its own regulations regarding notice and an opportunity to respond even where it was possible that a petitioner could be re-detained after the government complied with 8 C.F.R. § 241.13(i)(3).  *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 781-85 (D. Minn. 2025) (overruling objections to recommendation for release because ICE did not comply with 8 C.F.R. § 241.13(i)(3); also ordering release because Respondents also failed to show

12

removal was significantly likely in the reasonably foreseeable future); *see also Roble*, 803 F. Supp. 3d at 771-72  ("Because ICE violated its own regulations when it detained Roble without notifying him of the reasons why he was being detained, Roble is entitled to habeas relief.") (ordering release due to ICE's failure to comply with 8 C.F.R. § 241.13(i)(3); also ordering release because Respondents also failed to show removal was significantly likely in the reasonably foreseeable future).  Under § 241.13, "it is the government's burden to show a change in circumstance *before* revoking an order of supervision and detaining a person indefinitely."  *Vang*, No. 26-CV-1381 (JMG/DLM), at *5.  As one District Judge put it, "The government detained the petitioner first, and asked questions later.  That's not how this works."  *Id.* at 4.  The Court likewise concludes that Respondents' failure to comply with 8 C.F.R. § 241.13(i)(3) in this case is a basis for habeas relief, namely, release.

In view of the Court's finding that Respondents have unlawfully detained Petitioner since February 12, 2026, the Court sets an expedited deadline for objections to this Report and Recommendation.  *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, **unless the court sets a different deadline**.") (emphasis added)).  Any objections to this Report and Recommendation are due **February 27, 2026**.  Responses to objections are due **March 2, 2026**.

## IV.   RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS RECOMMENDED THAT**:

1. The Amended Petition for Writ of Habeas Corpus of Petitioner Moussa S. (Dkt. 7) be **GRANTED** such that:

   a. If Petitioner is being detained outside of Minnesota, Respondents be ordered to transport Petitioner to Minnesota and release Petitioner from custody immediately, where Petitioner's release in Minnesota must occur no later than 48 hours after the filing of an Order adopting this Report and Recommendation.

   b. If Petitioner is being detained in Minnesota, Respondents be ordered to release Petitioner from custody as soon as practicable, and no later than 48 hours from the filing of an Order adopting this Report and Recommendation.

   c. Given the weather conditions in Minnesota, Respondents be ordered to coordinate with Petitioner's counsel to ensure that upon Petitioner's release, they are not left outside in dangerous cold.  It is preferable to release Petitioner to counsel to ensure humane treatment.

   d. Respondents be ordered to release Petitioner with all personal effects, including his driver's license, passports, or immigration documents, where such documents are not clipped, defaced, or otherwise altered.

   e. Respondents be enjoined from imposing any conditions on Petitioner's release other than the conditions in his preexisting Order of Supervision.

   f. Respondents be enjoined from re-detaining Petitioner unless and until they comply with all requirements of 8 C.F.R. § 241.13(i)(3).  If, after releasing Petitioner, Respondents believe that they are prepared to comply with 8 C.F.R. § 241.13(i)(3), they be required contact Petitioner's counsel to schedule the required interview and Petitioner be required to attend the scheduled interview.

g.  If Respondents re-detain Petitioner after completing the required process, Respondents be required to file an update with the Court within 24 hours of re-detention.  While this update need not include the exact date and time of Petitioner's removal flight, it must identify the approximate time of Petitioner's removal.

2.  Petitioner Moussa S. be permitted to move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

Dated: February 24, 2026

_s/Elizabeth Cowan Wright_____
Elizabeth Cowan Wright
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. **The Court modifies this deadline such that objections are due on or before February 27, 2026.** *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline."). **Responses to objections are due on or before March 2, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).